1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH FLORES,

          Plaintiff,

     v.

JAN MORGEN, *et al.*,

          Defendants.

Case No. C08-5621 RJB/KLS

REPORT AND RECOMMENDATION

**Noted For: April 17, 2009**

14

15

16

     Before the Court are two ex parte motions for injunctive relief filed by Plaintiff Joseph

Flores. Dkts. # 13 and 37. Mr. Flores requests, *inter alia*, access to legal materials and postage, a

transfer to another penal institution and the suspension of a corrections officer. *Id.*

17

18

19

20

21

22

     Mr. Flores did not serve the Defendants with his motions. Thus, Defendants request that the

motions be stricken. Mr. Flores advises the Court and counsel that he did not receive defense

counsel's notice of appearance until January 14, 2009 and therefore, he filed his motions only with

the Court. Dkt. # 41. The Court notes, however, that Mr. Flores' second motion (Dkt. # 37) was

not served on defense counsel and that he continues to file letters and motions with the Court that

he has failed to properly note and serve on defense counsel.[1]

23

24

25

26

---

[1]Mr. Flores is advised that if he seeks relief from the Court, he must set forth his requests in
a pleading or motion and that he must serve copies of all pleadings and motions on all Defendants
through their counsel of record pursuant to Fed.R.Civ.P. 5(b)(1). Pursuant to Fed.R.Civ.P. 5(d),
Mr. Flores is also required to attach and file a certificate of service stating that he has served all

REPORT AND RECOMMENDATION - 1

Defendants have provided the Court with responses which have been considered by the Court. Dkts. # 14 and 39.  After careful review of the motions, Defendants' responses, and balance of the record, the undersigned recommends that Mr. Flores' motions for injunctive relief be denied.

## I.  Background and Relief Requested

Mr. Flores filed his application to proceed *in forma pauperis* and proposed civil rights lawsuit on October 14, 2008.  Dkt. # 1.  The Court granted his application to proceed *in forma pauperis* and filed the complaint.  Dkts # 4 and 5.  Mr. Flores claims that while he was incarcerated at the Washington Corrections Center (WCC), Defendants (who are employees of WCC) denied him the use of his electric wheelchair and certain medications in violation of his Eighth Amendment rights.  Dkt. # 5, p. 3.

On or about December 24, 2008, Mr. Flores was transferred to Airway Heights Corrections Center (AHCC).  Dkt. # 9.  Defendants have entered appearances, but have not answered the complaint.  Dkts. # 30 and 38.  Defendants' motion to dismiss is pending.  Dkt. # 36.

Mr. Flores sought to amend his pleading to add claims against employees of AHCC, but failed to provide the Court with a proposed amended complaint.  Dkt. # 25.  Under separate order, the Court is denying that motion.

Mr. Flores demands "legal access consisting of copies, books, mail, etc. ...", and seeks an Order directing the DOC to enjoin the Defendants and "all other persons acting in concert and participation with them" to allow him within 48 hours of request to "override the postage amount for any legal mail being mailed to the United States District Court."  Dkt. # 13.  Mr. Flores further requests that any Defendant denying him "legal access" be held in contempt of court.  *Id.*

In his second motion, Mr. Flores claims that guards at AHCC have retaliated against him by changing his medical records on the DOC computer and placing him in segregation without the use

Defendants with the pleading and/or motion every time he files and serves a document.

of his wheelchair.  Dkt. # 37, p. 1.  Mr. Flores seeks a transfer from AHCC to AVCC and an order

relieving CUS Burke of pay and benefits until this case is resolved.  *Id.*  If Mr. Flores is successful

in his litigation, Mr. Flores seeks a further order terminating CUS Burke's employment from the

DOC.  Dkt. # 37, p. 2.

## II. STANDARD OF REVIEW

The purpose of preliminary injunctive relief is to preserve the status quo or to prevent

irreparable injury pending the resolution of the underlying claim.  *Sierra On-line, Inc. v. Phoenix*

*Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  When seeking injunctive relief, the moving

party must show either (1) a likelihood of success on the merits and the possibility of irreparable

injury or (2) the existence of serious questions going to the merits and the balance of hardships

tipping in [the movant's] favor."  *See Nike, Inc. v. McCarthy*, 379 F.3d 576, 580 (9th Cir.

2004)(quoting *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991)) (internal quotations

omitted).  "These two alternatives represent extremes of a single continuum, rather than two

separate tests.  Thus, the greater the relative hardship to [the movant], the less probability of

success must be shown."  *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999)

(internal quotations omitted).  Under either test, the movant bears the burden of persuasion.

*Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 869 (9th Cir. 2003).

## III.  DISCUSSION

Under the Prison Litigation Reform Act, 18 U.S.C. § 3626 (PLRA), a plaintiff is not

entitled to prospective relief unless the court enters the necessary findings required by the Act:

> The court shall not grant or approve any prospective relief unless the court finds that
> such relief is narrowly drawn, extends no further than necessary to correct the
> violation of a Federal right, and is the least intrusive means necessary to correct the
> violation of the Federal right. The court shall give substantial weight to any adverse
> impact on public safety or the operation of a criminal justice system caused by the
> relief.

18 U.S.C. § 3626(a)(1)(A).

REPORT AND RECOMMENDATION - 3

1    In civil rights cases, injunctions must be granted sparingly and only in clear and plain cases.

2    *Rizzo v. Goode*, 423 U.S. 362, 378 (1976).   This holding applies even more strongly in cases

3    involving the administration of state prisons.  *Turner v. Safley*, 482 U.S. 78, 85, 107 S. Ct. 2254

4    (1987).  "Prison administration is, moreover, a task that has been committed to the responsibility of

5    those [executive and legislative] branches and separation of powers concerns counsels a policy of

6    judicial restraint.  Where a state penal system is involved, federal courts have . . . additional reason

7    to accord deference to the appropriate prison authorities."  *Id.*

8    In order to justify the extraordinary measure of injunctive relief under Federal Rule of Civil

9    Procedure 65, the moving party bears a heavy burden. *Canal Authority of the State of Florida v.*

10    *Callaway*, 489 F.2d 567 (5th Cir. 1974). A party seeking a preliminary injunction must fulfill one of

11    two standards: the "traditional" or the "alternative." *Johnson v. California State Bd. of*

12    *Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir.

13    1987). Although two tests are recognized, they are not totally distinct tests. Rather, they are

14    "extremes of a single continuum." *Funds for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir.

15    1992).

16    Under the traditional standard, a court may issue preliminary relief if it finds that: (1) the

17    moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably

18    prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public

19    interest favors granting relief. *Cassim*, 824 F.2d at 795. Under the alternative standard, the moving

20    party may meet its burden by demonstrating either (1) a combination of probable success and the

21    possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships

22    tips sharply in its favor. *Id*. at 795.[2]

23    _____

24    [2]In addition, under Federal Rule of Civil Procedure 65(a)(1), no preliminary injunction can
     be issued without notice to the opposing party.  A temporary restraining order may be granted under
     Rule 65(b), but only if:

25        1)        it clearly appears from specific facts shown by affidavit or by the verified complaint

26    REPORT AND RECOMMENDATION - 4

**A.  First Motion - Access to Legal Materials and Override Of Postage Amount**

Mr. Flores seeks access to unidentified "copies, books, mail, etc." to be ordered by the DOC, along with an Order directing the DOC to enjoin the Defendants and "all other persons acting in concert and participation with them" to allow him within 48 hours of a request to "override the postage amount for any legal mail being mailed to the United States District Court."  Dkt. # 13.  Mr. Flores further requests that any Defendant denying him "legal access" be held in contempt of court. *Id.*

The touchstone of an access to courts claim is whether the access to courts program provides inmates with "meaningful access to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). This is not a bright line test and an access to courts program is "evaluated as a whole to ascertain its compliance with constitutional standards." *Bounds v. Smith*, 430 U.S. 817, 832 (1997). In matters such as development of access to courts programs, courts are to defer to the expertise of prison officials. *Lewis*, 518 U.S. at 361 (prison officials are entitled deference with regard to access to courts programs). Inmates' rights of access to the courts are not unlimited, and the time, place and manner in which they are provided can be regulated. *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985) (discussing access to the law library).

Before an inmate can bring a lawsuit for an access to courts violation, the inmate must have standing. In *Lewis*, the Supreme Court held that to have standing to bring an access to courts claim, an inmate must allege both that he was denied access to legal materials or advice and that this denial harmed his ability to pursue non-frivolous legal action, that is, the inmate must show actual

---

that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and

2)      the [applicant] certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

injury. To show actual injury the inmate must, for example, show that because of the inadequate library facilities or because of the prison regulations governing access and use of the library facilities, the inmate was unable to file a complaint or that the inmate lost a case because the inmate could not timely file critical pleadings. *Id*. at 351.

Demonstration of actual injury does not automatically result in a right of access violation. *Lewis*, 518 U.S. at 353. A prison regulation impinging on a inmate's constitutional rights, even a right of access to courts, is valid if it is reasonably related to legitimate penological interests. *Id*. In addition, a showing of an inability to file a particular pleading is insufficient to establish a violation of access to the courts. The litigation must actually be damaged. *Lewis v. Casey, supra*. Thus, Mr. Floores must establish the existence of that damage. Mere conclusory allegations are insufficient to make that showing. *In re Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990); *In re Rice*, 118 Wn.2d 876, 855-886, 828 P.2d 1086, cert. denied, 506 U.S. 958, 113 S. Ct. 421 (1992). Delays in providing legal services are not of a constitutional magnitude in and of themselves. Even when such delays result in actual injury, if the delay is the result of legitimate penological interests, there is no constitutional violation. *Id*. Even the inability to file a particular pleading is insufficient to establish a violation of access to the courts. *Lewis v. Casey, supra*.

At the outset, it is noted that the DOC is not a party to this lawsuit and therefore, this Court lacks jurisdiction to grant the requested relief. In addition, Mr. Flores appears to seek unfettered access to his legal materials and postage, but fails to identify why such unlimited and extraordinary access is warranted. He has not alleged that he is being denied access or in what manner access to his legal materials or postage is insufficient.[3] Mr. Flores has not explained that he has been denied the ability to meet a filing deadline with a court or that he has a court deadline pending with which he must comply and is being denied access to necessary materials. Because he has not shown any

---

[3]In fact, in his second motion for injunctive relief, Mr. Flores states that after he kited the SMU counselor, he received his legal box the next day. Dkt. # 37, p. 2.

irreparable injury if he is not granted the extraordinary relief he has requested, Mr. Flores' motion must be denied.

Defendants also object that Mr. Flores improperly raises issues in this motion that are not material to his claims of cruel and unusual punishment that are the subject of his civil rights complaint at issue in this case. The Court agrees. Mr. Flores makes no access to courts claim in his complaint. Dkt. # 5. It is appropriate to grant in a preliminary injunction "intermediate relief of the same character as that which may be granted finally." *De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945); *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997). However, a Court should not issue an injunction when the relief sought is not of the same character, and the injunction deals with a matter lying wholly outside the issues in the underlying action. *Id.*

For the foregoing reasons, the undersigned recommends that Mr. Flores' motion for injunctive relief regarding access to his legal materials and order for an override on the postage amount for mail directed to the District Court be denied.

**B.      Second Motion - Transfer to AVCC and Suspension of CUS Burke**

In his second motion/letter, Mr. Flores claims that guards at AHCC have retaliated against him by changing his medical records on the DOC computer and placing him in segregation without the use of his wheelchair. Dkt. # 37, p. 1. Mr. Flores alleges that he was forced to sit outside of the sergeant's office while Corrections Officer Martin and a black corrections officer discussed whether he needed the use of his wheelchair and then CUS Burke left him to sit in the dayroom for four hours without elevation for his legs. *Id.*, p. 2. Thereafter, Mr. Flores alleges that Corrections Officers Alendorf, Smith and Chambers took him to the R-Unit holding cell where one of the SMU correction officers yanked him out of his wheelchair and slammed him in back where his surgery had been performed so hard that he almost passed out. *Id.* He was then forced into the back of a car and driven to the SMU about 45 feet away. *Id.* Once he arrived in SMU, he asked about his legal box and was told to kite the counselor for SMU. *Id.* He did so and received he legal box the

next day. *Id.*

Mr. Flores states that he needs "the court to move [him] to AVCC, Yakima, WA," before he end[s] up dead or hurt." *Id.*, p. 2. Mr. Flores states that he is "real sick and real weak," that he has "been denied medical and access to legal," and "mentioned in one of [his] other documents [that he] feared the counselor Burke or CUS Hewston or any of AHCC would change things in the computer." *Id.*

Generally, a prisoner's release or transfer from a prison will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action. *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986). To secure injunctive relief, a plaintiff must demonstrate "a very significant possibility" that future harm will ensue. *Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir. 1990). The burden of showing a likelihood of a recurrence of harm is "firmly on the plaintiff." *Id.* at 1251.

Mr. Flores sued employees at WCC for denying him the use of his electric wheelchair and certain medications while he was incarcerated at WCC, which he alleges violated his Eighth Amendment rights. Dkt. # 5, p. 3. Mr. Flores is no longer at WCC, but is currently residing at AHCC. Dkt. # 37. Employees at WCC do not have the ability to control or direct actions of individuals not a party to this lawsuit.

Although Mr. Flores has sought leave to amend his complaint to add AHCC employees and allegations regarding the withholding of medical and disability accommodations at AHCC, he has failed to provide the Court with a proposed amended complaint to date. Therefore, this Court does not have jurisdiction over any staff at AHCC as they are not parties in this lawsuit. Accordingly, Mr. Flores' request for a preliminary injunction is moot.

In addition, it is well established that an inmate has no right to be housed in a particular prison or to have any particular custody classification. *Olim v. Wakinekona*, 461 U.S. 238 (1983);

REPORT AND RECOMMENDATION - 8

*Hernandez v. Johnston*, 833 F.2d 1316 (9th Cir. 1987); *Smith v. Noonan*, 992 F.2d 987 (9th Cir. 1993); *May v. Baldwin*, 109 F.3d 557 (9th Cir. 1997). However, the Eighth Amendment protects against future harm and supports an injunction if an inmate proves the conditions in the prison are unsafe and life threatening. *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

Mr. Flores alleges that he was hurt when he was forced to wait for four hours while the officers examined his records and that one of the corrections officers slammed him in the back where he had surgery and he almost passed out. Dkt. # 37, p. 2. However, Mr. Flores has offered no evidence of a real and immediate threat of future harm.

Because he has failed to show that there is a real and immediate threat of future harm, the undersigned recommends that Mr. Flores' second motion for preliminary injunction be denied.

## IV. CONCLUSION

A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 17, 2009**, as noted in the caption.

DATED this  19th  day of March, 2009.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9