1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

JOSEPH R. FLORES,

10

Plaintiff,

No. C08-5621 RJB/KLS

11

v.

**REPORT AND RECOMMENDATION**
**Noted for:  August 20, 2010**

12

JAN MORGEN, DOE SMITH,
KIMBERLY DOTSON, DOE ABLE,
RUSTY SMITH, MAGGIE MILLER-
STOUT, G. BURK, and DOE
HEWSTON,

13
14
15

Defendants.

16

    Before the court is the Motion for Summary Judgment of Defendants Doe Smith,

17

Kimberly Dotson, Doe Able, Rusty Smith, Maggie Miller-Stout, G. Burk, Doe Hewston, and Jan

18
19

Morgen.  Dkt. 88.  Plaintiff Joseph R. Flores did not file a response.  Under Local Rule 7 (b) (2),

20

his failure to file papers in opposition to a motion may be deemed as an admission that the

21

motion has merit.

22

    Having reviewed Defendants' motion, supporting declarations and evidence, and balance

23

of the record, the undersigned finds that Defendants' motion should be granted because Plaintiff

24

has failed to state a valid constitutional claim.

25
26

REPORT AND RECOMMENDATION - 1

**SUMMARY**

In his Amended Complaint, Mr. Flores sues several individuals employed by the Department of Corrections (DOC) at Airway Heights Correction Center (AHCC). Dkt. 64. Mr. Flores alleges generally that he was (1) denied medical care; (2) denied a handicap accessible room; (3) denied a change in medical classification to facilitate a transfer to the Ahtanum View Corrections Center (AVCC); (4) forced to attend the pill line and chow hall in a wheelchair in inclement weather; and, (5) denied timely access to legal copies.

Mr. Flores does not describe the nature of his health or medical needs. Although Defendants provide evidence that Mr. Flores was seen numerous times by AHCC medical personnel, they do not describe the medical treatment rendered and did not provide Mr. Flores' medical records. However, attachments to his complaint indicate that Mr. Flores suffers from leg edema and complains of chronic pain. He is not to sit for prolonged periods of more than one hour at a time and must keep his legs elevated at other times. The attachments also reflect that he was given a wheelchair with adjustable leg supports to allow elevation of his leg and a wheelchair pusher. According to a Health Status Report dated December 4, 2008, he can be assigned to any facility with major medical on site. Dkt. 64, pp. 6-14.

In his Amended Complaint, Mr. Flores specifically claims that when he arrived at AHCC, he was supposed to undergo a medical evaluation due to his health. *Id.*, p. 3. Mr. Flores does not describe the condition of his health. Mr. Flores also claims that from October 15, 2008 until April 26, 2009, his medical needs were never met. *Id.* These medical needs are also unspecified. He alleges that on October 15, 2008, Dr. Smith, PAC Dotson and Nurse Able denied medical treatment and needs, such as a room assignment, supplies and medication. *Id.* Between October 15, 2008 and October 20, 2008, he was denied a handicap room and was forced to be in a two-

REPORT AND RECOMMENDATION - 2

man cell with no Americans with Disability (ADA) access.  On October 20, 2008, he was moved to R-unit, where G. Burk and Doe Hewston denied him medical accommodations.  These individuals allegedly interfered with Mr. Flores' medical classification and transfer to AVCC, DOC's medically oriented facility, which Mr. Flores describes as an assisted living facility.  *Id.*

Mr. Flores also alleges that during November 2008 and February 2009, he was forced to go out in "0 or below weather," in rain and snow to the pill line and chow hall in a wheelchair. *Id.*  He claims that if he did not go, he would be infracted.  *Id.*

Finally, Mr. Flores alleges that Defendants Burk and Hewston failed to provide him with legal copies on time.  *Id.*

Mr. Flores seeks $5 million and $150,000.00 per day for the 47 days he was placed in an isolation unit.  *Id.,* p. 4.  Mr. Flores requests that this court review all of his disciplinary hearings, minor and major, and that the court restore 15 days of good time.  *Id.*  According to the OMNI Legal Face Sheet provided by Defendants, Mr. Flores was admitted to prison on August 20, 2008.  Dkt. 88-2, p. 11 (CM/ECF pagination).  He was released from DOC custody on April 26, 2009.  *Id.*, p. 8.

## UNDISPUTED FACTS

Mr. Flores was initially housed at the Washington Corrections Center in Shelton (WCC), but later moved to Airway Heights Corrections Center in Airway Heights, Washington (AHCC). Dkt. 88-2, pp. 9, 11.  During his stay in Shelton, he received medical care in the community at the local hospital.  *Id.*, p. 10.  After his transfer to Airway Heights, he twice was sent to the hospital or other medical provider to receive medical attention.  *Id*., p. 9.

When Mr. Flores arrived at AHCC on October 15, 2008, he was supposed to be evaluated by medical staff due to his health.  Dkt. 64, p. 3.  Mr. Flores alleges that he was denied any

REPORT AND RECOMMENDATION - 3

medical treatment because the medical staff did not have time and that his medical needs were never met from October 15, 2008 until April 26, 2009.  *Id.*

Kimberley Dotson, a Certified Physician Assistant employed by the DOC as a Corrections Health Care Specialist II at AHCC, provided medical care to Mr. Flores while he was housed at AHCC from October 12, 2008 through April 21, 2009.  Dkt. 88-2, p. 20, ¶ 4.  She has reviewed his records, which she believes are complete, and has determined that Mr. Flores was seen by medical professionals at AHCC approximately fifty times.  *Id.*

When Mr. Flores arrived at AHCC, he was placed in general population and was able to meet with medical staff when needed.  *Id.*, p. 20, ¶ 5.  The usual procedure for offenders in general population to request a medical appointment or request some medical treatment is to fill out a medical kite, which staff respond to and can set an appointment for the offender if needed.  Offenders can also access care by declaring a medical emergency or signing up for sick call.  If the offender's needs cannot be met through this system and they require a higher level of care or monitoring, they may be admitted to the infirmary at the institution.  *Id.*

The infirmary at AHCC is in the medical section of the institution.  *Id.*, ¶ 6.  Medical staff are present around the clock to provide necessary care for offenders.  It is similar to a general care hospital setting.  Medicine and other types of treatment are brought to the offender instead of making him get it himself.  *Id.*

According to Mr. Flores' medical records, he was admitted to the infirmary unit on several occasions, including October 28, 2008 to November 3, 2008; November 7, 2008 to November 18, 2008; December 10, 2008 to December 11, 2008; December 16, 2008 to January 14, 2008; and, February 14, 2009 to February 15, 2009.  Dkt. 88-2, p. 21, ¶ 19.  Mr. Flores was

REPORT AND RECOMMENDATION - 4

admitted to the infirmary on more than one occasion for monitoring while his lower extremities were elevated.  *Id.*

When offenders are in the infirmary, they receive their medications at their bed.  When they are not in the infirmary, they are expected to obtain medications from the "pill line" window located outside the medical department at AHCC.  *Id.*, ¶ 7.  Offenders are expected to come to the window at the designated times to get their medications, even if they are confined to a wheelchair, but are otherwise capable of getting to the pill line window.  Generally, offenders do not wait any longer than a few minutes in line to obtain the medications and are expected to wait, regardless of the weather.  The pill line window is under cover and not directly exposed to adverse weather like snow or rain.  Offenders may have to be in that inclement weather for a short time to get to the medication window.  When Mr. Flores was in general population, he was expected to obtain his medications from the pill line window.  *Id.*  He also had orders to receive his medications during clinic visits for scheduled procedures to prevent him from having to wait in line outside.  *Id.*

If offenders have a wheelchair but are not able to propel the chair forward, they are offered a wheelchair pusher.  This is usually another offender who is paid to push the wheelchair bound offender to where he needs to go so he can adequately program, see medical staff, obtain his medications and get to his living unit.  *Id.*, p. 21, ¶ 8.  When Mr. Flores was not in the infirmary at AHCC, he used a wheelchair and a wheelchair pusher to make his way around the institution.  There was no indication that he suffered any harm while he was pushed to the pill line or waited for his medications during the winter months.  To alleviate any fears or risk he may have had of becoming ill while waiting in the pill line outside during the winter months, he

REPORT AND RECOMMENDATION - 5

was allowed to shower at a different time to alleviate the danger of having wet hair outside in the cold. *Id.*

## SUMMARY JUDGMENT STANDARD

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those positions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 788 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S. Ct. 2502, 91 L.Ed.2d 202 (1986).

## SECTION 1983 STANDARD

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

REPORT AND RECOMMENDATION - 6

1    another's affirmative act, or omitted to perform an act which he was legally required to do that

2    caused the deprivation complained of.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981)

3    (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

4         Plaintiff must also allege facts showing how individually named defendants caused or

5    personally participated in causing the harm alleged in the complaint.  *Arnold v. IBM*, 637 F.2d

6    1350, 1355 (9th Cir. 1981).  A defendant cannot be held liable under 42 U.S.C. § 1983 solely on

7    the basis of supervisory responsibility or position.  *Monell v. New York City Dept. of Social*

8    *Services*, 436 U.S. 658, 694 n. 58 (1978).  A theory of respondeat superior is not sufficient to

9    state a section 1983 claim.  *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir. 1982).

10                                    **DISCUSSION**

11   **A.    Denial of Medical Care**

12        Deliberate indifference to an inmate's serious medical needs violates the Eighth

13   Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 7,

14   104 (1976).  Deliberate indifference includes denial, delay or intentional interference with a

15   prisoner's medical treatment.  *Id*. at 104-5; see also *Broughton v. Cutter Labs*., 622 F.2d 458,

16   459-60 (9th Cir. 1980).  To succeed on a deliberate indifference claim, an inmate must

17   demonstrate that the prison official had a sufficiently culpable state of mind.  *Farmer v. Brennan*,

18   511 U.S. 825, 836 (1994).  A determination of deliberate indifference involves an examination of

19   two elements: the seriousness of the prisoner's medical need and the nature of the defendant's

20   response to that need.  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

21        First, the alleged deprivation must be, objectively, "sufficiently serious."  *Farmer*, 511

22   U.S. at 834.  A "serious medical need" exists if the failure to treat a prisoner's condition would

23   result in further significant injury or the unnecessary and wanton infliction of pain contrary to

REPORT AND RECOMMENDATION - 7

1   contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993);

2   *McGuckin*, 974 F.2d at 1059. Second, the prison official must be deliberately indifferent to the

3   risk of harm to the inmate. *Farmer*, 511 U.S. at 834.

4       An official is deliberately indifferent to a serious medical need if the official "knows of

5   and disregards an excessive risk to inmate health or safety." *Id*. at 837. Deliberate indifference

6   requires more culpability than ordinary lack of due care for a prisoner's health. *Id*. at 835. In

7   assessing whether the official acted with deliberate indifference, a court's inquiry must focus on

8   what the prison official actually perceived, not what the official should have known. See *Wallis*

9   *v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). In other words an official must (1) be actually

10   aware of facts from which an inference could be drawn that a substantial risk of harm exists, (2)

11   actually draw the inference, but (3) nevertheless disregard the risk to the inmate's health.

12   *Farmer*, 511 U.S. at 837-8.

13       Prison authorities have "wide discretion" in the medical treatment afforded prisoners.

14   *Stiltner v. Rhay*, 371 F.2d 420, 421 (9th Cir. 1971), *cert. denied*, 387 U.S. 922 (1972). To

15   prevail on an Eighth Amendment medical claim, the plaintiff must "show that the course of

16   treatment the doctors chose was medically unacceptable under the circumstances . . . and the

17   plaintiff must show that they chose this course in conscious disregard of an excessive risk to

18   plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *cert. denied*, 519 U.S.

19   1029. A claim of mere negligence or harassment related to medical problems is not enough to

20   make out a violation of the Eighth Amendment. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th

21   Cir. 1981). Simple malpractice, or even gross negligence, does not constitute deliberate

22   indifference. *McGuckin*, 974 F.2d at 1059. Similarly, a difference of opinion between a

23   prisoner-patient and prison medical authorities regarding what treatment is proper and necessary

24

25

26

REPORT AND RECOMMENDATION - 8

does not give rise to a §1983 claim. *Franklin*, 662 F.2d at 1344; *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970).   If a plaintiff is claiming a delay of medical care, then he must demonstrate that the delay was actually harmful. *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).

Mr. Flores alleges that he "was denied *any* medical treatment due to the medical staff did not have time.  My medical needs *were never* met from 10-15-08 till 4-26-09."  Dkt. 64, p. 3 [emphasis added].

Although the record before the court does not indicate the nature of the treatment Mr. Flores received, it does indicate that Mr. Flores was seen by medical staff between October 2008 and April 2009.  PA Dotson states in her declaration that she treated Mr. Flores during that time and that she has determined through her review of Mr. Flores' medical records that he was seen by AHCC medical professionals approximately 50 times during that time period.

Moreover, Mr. Flores does not complain that the treatment he did receive was inadequate or harmful.  Instead, he alleges that he received no treatment at all.  However, it is undisputed that he was seen on numerous occasions by medical personnel at AHCC and was admitted to the infirmary unit on five occasions for as long as five days at a time.  Mr. Flores failed to file a response to Defendants' motion for summary judgment and presents no contradicting evidence.

Even if Mr. Flores disagrees with the nature of the treatment he received, a difference of opinion between a prisoner-patient and prison medical authorities regarding what treatment is proper and necessary does not give rise to a §1983 claim. *Franklin*, 662 F.2d at 1344; *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970).

Viewing all of the evidence in the light most favorable to Mr. Flores, the undersigned finds that Mr. Flores has failed to raise a material issue of fact as to whether any of the

REPORT AND RECOMMENDATION - 9

Defendants were deliberately indifferent to a serious medical need and recommends that

summary judgment be granted in favor of Defendants.

**B.      Conditions of Confinement - Handicap Accessible Room / Access to Pill Line and Chow Hall**

Mr. Flores alleges that he was denied a handicap accessible room for a period of five

days from October 15, 2008 to October 20, 2008.  Dkt. 64, p. 3.  He alleges that on October 20,

2008, he was moved to R-Unit and denied unspecified "medical accommodations."

To determine whether the conditions of Mr. Flores' confinement constituted cruel and

unusual punishment, the court must assess whether Mr. Flores was deprived of the "minimal

civilized measure of life's necessities."  *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S. Ct. 2321, 115

L. Ed.2d 271 (1991).  If so, a prison official may be held liable if he acted with "deliberate

indifference" to a substantial risk of serious harm.  Mere negligence is not sufficient to establish

liability.  *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994).

Rather, the official's conduct must have been "wanton," which turns not upon its effect on the

prisoner, but rather, upon the constraints facing the official.  *Wilson*, 501 U.S. at 302-03.

It is well settled that prison officials have a duty to ensure that prisoners are provided

adequate shelter, food, clothing, sanitation, medical care, and personal safety.  See *Farmer*, 511

U.S. 825.  The Supreme Court held that Title II of the Americans with Disabilities Act (ADA)

covers inmates in state prisons.  *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206,

118 S. Ct. 1952, 141 L.Ed.2d 215 (1998) (citing 42 U.S.C. § 12132).  Other courts have found

that the failure to provide adequate, handicap accessible toilet, showering facilities, or housing

accommodations to mobility-impaired inmates may violate constitutional rights.  See, e.g.,

*LaFaut v. Smith*, 834 F.2d 389, 392-94 (4th Cir. 1987) (failure to provide accessible toilet

REPORT AND RECOMMENDATION - 10

facilities); *Casey v. Lewis*, 834 F. Supp. 1569, 1582 (D. Ariz. 1993) (failure to provide adequate

shower facilities); *Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998) (failure to provide handicap

accessible shower facilities to pretrial detainee).

A disabled prisoner states a claim for cruel and unusual punishment if he alleges prison

officials failed to repair a dangerous condition after the officials were made aware of a

substantial risk of serious injury to the disabled prisoner.  *See Frost v. Agnos*, 152 F.3d 1124 (9th

Cir.1998).  The prisoner in *Frost* had a broken leg, which was in a long leg cast that required him

to use crutches. Although a prison doctor stated that the prisoner should be placed in a

handicapped unit, prison officials failed to accommodate the request and the prisoner fell and

injured himself in the shower several times.  *Id.*, pp. 1127, 1129.  Prison guards were aware of

this and the prisoner had submitted several grievance forms to advise prison officials of the risk

posed by the shower.  *Id*. at 1129.   The Ninth Circuit explained that prison officials could have

taken basic steps to guarantee the prisoner's safety, such as allowing the prisoner to use a chair in

the shower, installing a handicap bar, or providing a guard to assist him and that failure to do so

was evidence of deliberate indifference.  *Id.*

Attached to his Amended Complaint is a grievance in which Mr. Flores states "I am ADA

… and want to see all non-compliance write up on or reports and show me where it states under

ADA accommodations that I have to sit in cold for over an hour, go to pill line in a wheel chair

in freezing weather, etc.  Also I have been waiting to go to AVCC since August of 2008 and

nobody ever explained that there was a waiting list."  Dkt. 64, p. 12.   Nowhere in his Amended

Complaint does Mr. Flores explain his disability or the nature of his injury and physical

symptoms.  Nor does he allege that because of his disability, he was exposed to a dangerous

condition – of which the Defendants were aware and disregarded - that posed a substantial risk of

REPORT AND RECOMMENDATION - 11

serious harm to him.   For example, Mr. Flores does not explain what was wrong with the cell where he was placed, why he could not live in that cell, how his movements may have been restricted.  Mr. Flores also provides no explanation for why his unspecified medical condition or conditions qualifies as a disability and/or limits his activities.

Mr. Flores does complain that he was forced "to sit in cold for over an hour, go to pill line in a wheel chair in freezing weather, etc.," and that he was "forced to go out in 0 or below weather, to pill line, chow hall, call [illegible], in a wheel chair in rain or snow…."  Dkt. 64, p. 12.   However, Mr. Flores does not allege that he suffered any harm or injury from these conditions.

On the other hand, the undisputed evidence before the court reflects that when Mr. Flores was not in the infirmary at AHCC, he used a wheelchair and a wheelchair pusher to make his way around the institution.  Dkt. 88-2, p. 21, ¶ 8.  When Mr. Flores was in general population, he was expected to obtain his medications from the pill line window located outside the medical department at AHCC.  Dkt. 88-2, ¶ 7.   Mr. Flores also had orders to receive his medications during clinic visits for scheduled procedures to prevent him from having to wait in line outside. *Id.*   Mr. Flores was also allowed to shower at a different time to alleviate the danger of having wet hair outside in the cold.  *Id.*, p. 21, ¶ 8.

There is no evidence that conditions in Mr. Flores' cell, waiting in the pill line or navigating around the prison in a wheelchair posed a substantial risk of serious harm to Mr. Flores.  There is also no evidence that any of the Defendants knew or should have known of an excessive risk to Mr. Flores' safety and that they deliberately disregarded that risk.  *Farmer*, 511 U.S. at 837.

REPORT AND RECOMMENDATION - 12

Accordingly, the undersigned recommends that Mr. Flores' Eighth Amendment claims relating to Defendants' failure to provide a handicap accessible room or other accommodations be dismissed.

**C.   Transfer to AVCC**

Mr. Flores alleges that he was denied a change in his medical classification and a transfer to AVCC.  Dkt. 64, p. 3.  Materials attached to Mr. Flores' complaint indicate his classification counselor recommended that Mr. Flores remain at his parent facility, AHCC, until his release. The materials also reflect that the medical department did not consider his medical condition severe enough to request a transfer to AVCC because his medical needs could be accommodated at AHCC.  *Id.*, p. 5.  A Health Status Report dated December 4, 2008, indicates that Mr. Flores "may be assigned to any facility with major medical on site."  *Id.*, p. 6.

A prison inmate has no constitutional right to a particular classification or custody level. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987), citing *Moody v. Daggett*, 429 U.S. 78 (1976); see also *Sandin v. Connor*, 515 U.S. 472 (1995) (even confinement in segregation does not trigger constitutional protection).  Inmates also have no constitutional right to be incarcerated in a particular prison, and a transfer from one institution to another within a state's prison system does not implicate due process.  *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

The only evidence before the court indicates that Defendants are of the opinion that Mr. Flores' medical needs were being appropriately met while he was housed at AHCC.  *See, e.g.,* Dkt. 88-2, ¶ 4.  Ms. Dotson's review of Mr. Flores' medical records indicates that Mr. Flores was seen by medical professionals at AHCC approximately 50 times.  *Id.*

Although the nature of Mr. Flores' medical condition and treatment of that condition are unknown, there is no evidence before the court from which it may be inferred that Mr. Flores'

REPORT AND RECOMMENDATION - 13

constitutional rights were violated when he was denied a transfer to AVCC. Indeed, there is also

no evidence that Mr. Flores' constitutional rights were violated by his assignment to AHCC.

Accordingly, the undersigned recommends that Defendants' motion for summary

judgment be granted on Mr. Flores' claim that he was unconstitutionally denied a change in

medical classification and transfer to AVCC.[1]

**D.    Access to Courts**

Mr. Flores alleges that he was denied his legal copies on time in violation of his

Fourteenth Amendment rights. Dkt. 64, p. 3.

The Fourteenth Amendment guarantees persons in state custody meaningful access to

the courts, a right which is an aspect of the First Amendment right to petition the government for

a redress of grievances. *Bill Johnson's Restaurants, Inc. v. National Labor Relations

Board*, 461 U.S. 731, 741, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983); *Bounds v. Smith*,

430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). This right of access requires state

officials to assist persons in state custody in preparing and filing legal papers by either: (1)

providing them with persons trained in the law or (2) providing adequate law libraries. *Bounds*,

430 U.S. at 828. However, "law libraries and legal assistance programs are not ends in

themselves, but only the means for ensuring 'a reasonably adequate opportunity to present

claimed violations of fundamental constitutional rights to the courts.'" *Lewis v. Casey,* 518 U.S.

343, 351 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (quoting *Bounds*, 430 U.S. at 825). The

---

[1] To the extent Mr. Flores has stated any claim for injunctive relief for placement at AVCC, that claim is now moot because he is no longer incarcerated. When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. *See Weinstein v. Bradford,* 423 U.S. 147, 148-49, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (finding prisoner's due process claim to be moot once he obtained a full release from prison supervision); *Dilley v. Gunn,* 64 F.3d 1365, 1368-69 (9th Cir.1995) (finding prisoner's suit for injunctive relief moot upon his transfer to another prison); *Chronicle Publ'g Co. v. Rison,* 962 F.2d 959, 960 (9th Cir.1992) (same).

REPORT AND RECOMMENDATION - 14

purpose of the right to meaningful access is to provide those in state custody the tools necessary "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355.

To establish a violation of the right of access to courts, a plaintiff must allege both that he was denied access to legal research materials or advice and that this denial harmed his ability to pursue non-frivolous legal action, i.e., plaintiff must show actual injury. A plaintiff cannot show an actual injury "simply by establishing that [the state's] law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Instead, actual injury results from "some specific 'instance in which [the plaintiff] was actually denied access to the courts.'" *Sands v. Lewis*, 886 F.2d 1166, 1170-71 (9th Cir. 1989).

Mr. Flores alleges only that "Burk, Hewston denied me legal copies on time and to the courts …". Dkt. 64, p. 3. Mr. Flores provides no information or evidence relating to the subject of the legal copies, their purpose, or even a case in which the legal copies were to be filed. He does not allege that he was not able to meet a court imposed deadline or that he suffered any other harm by the delay in receiving the photocopies. As noted above, the Ninth Circuit has determined that "right of access" claims that do not allege inadequacy of the law library or inadequate assistance from persons trained in the law, must allege an "actual injury" to court access. *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir.1989). An "actual injury" consists of some specific instance in which an inmate was actually denied access to the courts. *Id*. Only if an actual injury is alleged may plaintiffs' claim survive. *Id*. Mr. Flores does not allege an actual injury and, therefore, an allegation of a delay in receiving his legal copies simply fails to state a claim.

REPORT AND RECOMMENDATION - 15

1    Accordingly, Defendants' motion for summary judgment on Mr. Flores' legal photocopy

2    claim should be granted and this claim dismissed with prejudice.[2]

3    **E.      Infractions / Restoration of Good Time Credit**

4        Mr. Flores alleges that he was "written up" if he did not go to the chow hall or pill line in

5    his wheelchair in inclement weather.  Dkt. 64, p. 3.  He also alleges that he lost 15 days of good

6    time credits, but he does not explain the specific infraction that resulted in that loss of time and

7    he does not allege any improprieties as to any infraction hearing.  Mr. Flores asks that the court

8    review all of his infractions, "minor and major," to award him $150,000.00 per day for 47 days

9

10   spent in isolation, and to restore 15 days of good time.  *Id.*, p. 4.

11       Although restoration of good-time credit is not cognizable in a § 1983 action, declaratory

12   judgments, certain types of injunctive relief and damages are not barred in a § 1983 action for

13   loss of good-time credit.  *Preiser v. Rodriguez*, 411 U.S. 475, 499 n. 14, 93 S. Ct. 1827, 36

14   L.Ed.2d 439 (1973) (actual restoration of good-time credits must be sought in state proceedings).

15   However, to recover damages for allegedly unconstitutional action that would render a

16   conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has

17

18   been reversed or declared invalid by a state tribunal or "called into question" by issuance of a

19

20

21

22

23   _____

[2] The court notes that the Amended Complaint contains a vague reference to retaliation ("see all motions filed for retaliation").  Dkt. 64, p. 3.  However, the Amended Complaint is devoid of any factual allegations from which a claim of retaliation may be inferred.  *See, e.g, Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300-01 (9th Cir. 1999) (A plaintiff can establish that his First Amendment rights have been adversely affected by retaliatory conduct only when the plaintiff shows: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of plaintiff's constitutional rights.)

24

25

26

REPORT AND RECOMMENDATION - 16

1  federal writ of habeas corpus.  *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129

2  L.Ed.2d 383 (1994).[3]

3          An action for damages for improper withholding of good-time credit (which affects

4  length of sentence rather than fact of sentence) is cognizable under § 1983, as long as the claim

5  is "not frivolous and is of sufficient substance to invoke the jurisdiction of the federal court."

6  *Wolff v. McDonald*, 418 U.S. 539, 554 (1974).  A prisoner is also entitled to minimal

7  requirements of procedural due process, such as advanced written notice of the violation,

8  statement of evidence relied upon, reason for denying the good-time credit and attendance at the

9

10 infraction hearing where he can call witnesses and present evidence.  *Id.*

11         Mr. Flores makes no allegation of substance as to the loss of his good time credit.  The

12 Amended Complaint is completely devoid of facts relating to the nature of any infraction,

13 "minor" or "major."  Additionally, Mr. Flores does not allege and provides no evidence from

14 which it may be inferred that he was not provided with the minimal requirements of procedural

15

16 due process at any infraction hearing.

17         Accordingly, the undersigned recommends that Defendants' motion for summary

18 judgment relating to any claim for loss of good time credit and/or the imposition of infractions be

19

20 granted and this claim be dismissed without prejudice.

21 **F.     Personal Participation – Defendant Jan Morgen**

22         Defendants argue that Mr. Flores has not alleged the personal participation of Defendant

23 Jan Morgen and absent any specific allegations against her, claims against her should be

24

25 _____

26 [3] In this regard, the court notes that Mr. Flores served his sentence and was released from prison in April 2009.  Any habeas petition premised on denial of due process in a disciplinary proceeding becomes moot upon the release of the prisoner after having served his sentence.  *Nonnette v. Small*, 316 F.3d 872, 875-876 (9th Cir. 2002).

REPORT AND RECOMMENDATION - 17

1    dismissed.  Dkt. 88, p. 12.  Defendants also argue that there are only generalized allegations

2    against "a number of other medical professionals and [AHCC] staff."  *Id.*

3         To sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he

4    suffered a violation of rights protected by the Constitution or created by federal statute, and (ii)

5    that the violation was proximately caused by a person acting under color of state law.  *See*

6    *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is

7    satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

8    another's affirmative act, or omitted to perform an act which he was legally required to do that

9    caused the alleged deprivation.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting

10   *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

11        Supervisory personnel are generally not liable under § 1983 for the actions of their

12   employees.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) (holding that there is no

13   respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

14   violations of subordinates if the supervisor participated in or directed the violations.  *See id*.

15   Knowledge and acquiescence in a subordinate's unconstitutional conduct is insufficient;

16   government officials, regardless their title, can only be held liable under § 1983 for his or her

17   own conduct and not the conduct of others.  *See Ashcroft v. Iqbal*, ---U.S. ----, ----, 129 S. Ct.

18   1937, 1949, 173 L.Ed.2d 868 (2009).  When a defendant holds a supervisory position, the causal

19   link between such defendant and the claimed constitutional violation must be specifically

20   alleged.  See *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979); *Mosher v. Saalfeld*, 589 F.2d

21   438, 441 (9th Cir.1978).  Vague and conclusory allegations concerning the involvement of

22   supervisory personnel in civil rights violations are not sufficient.  *See Ivey v. Board of Regents*,

23   673 F.2d 266, 268 (9th Cir.1982). "[A] plaintiff must plead that each Government-official

REPORT AND RECOMMENDATION - 18

defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 129 S.Ct. at 1948.

In his Amended Complaint, Mr. Flores named Jan Morgan as a defendant, but included no allegations against her.   Therefore, Mr. Flores has failed to state a claim for relief against her under Section 1983.   Accordingly, the undersigned recommends that Defendants' motion for summary judgment on Mr. Flores' claim against Defendant Morgan be dismissed with prejudice.

**G.     Qualified Immunity**

Defendants contend that they are entitled to qualified immunity.   "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"   *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)).   The court evaluates a defendant's qualified immunity defense using a two-step inquiry.   *Id*.   However, the Supreme Court recently held that this two-step inquiry is no longer an inflexible requirement.   *Pearson v. Callahan*, ---U.S. ----, 129 S. Ct. 808, 818, 172 L.Ed.2d 565 (2009) (explaining "that, while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory").   It is within our "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   *Id*.

Under *Saucier's* first prong, the court must determine whether, viewing the facts in the light most favorable to the plaintiff, the government employees violated the plaintiff's constitutional rights.   *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151.   If the court determines that a constitutional violation has occurred, under *Saucier's* second prong, it must determine whether the rights were clearly established at the time of the violation.   *Id*.   For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand

REPORT AND RECOMMENDATION - 19

that what he is doing violates the right." *Id*. at 202, 121 S. Ct. 2151 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987)).  The protection afforded by qualified immunity "safeguards 'all but the plainly incompetent or those who knowingly violate the law.'"  *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist*., 149 F.3d 971, 977 (9th Cir.1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986)).

It is not necessary to address Defendants' arguments that qualified immunity should be applied to Plaintiff's allegations because the court has already determined that no constitutional violation has occurred.

### CONCLUSION

Based in the foregoing, the undersigned recommends that that Defendants' motion for summary judgment (Dkt. 88) be **GRANTED** and that Plaintiff's claims be **dismissed with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **August 20, 2010**, as noted in the caption.

DATED this   2nd   day of August, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20